UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID KOOB,                          )
                                     )
            Plaintiff,               )
                                     )
        v.                           )          No. 4:07 CV 1603 DDN
                                     )
CRH TRANSPORTATION, INC.,            )
and JOHN DUBUQUE,                    )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

This action is before the court on the motion of plaintiff David
Koob to remand the case back to the Circuit Court of the City of St.
Louis (Doc. 8), and the motions of defendant CRH Transportation, Inc.
(CRH) and John Dubuque to dismiss the case (Docs. 10, 24). The parties
have consented to the exercise of plenary authority by the undersigned
United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc.
22.) A hearing was held on November 15, 2007.

## I. BACKGROUND

Plaintiff David Koob brought this action for the intentional tort
of libel against defendants CRH Transportation, Inc. and John Dubuque
in the Circuit Court of the City of St. Louis. In his complaint, Koob
alleges that he is an over-the-road truck driver, CRH is a trucking
business, and defendant John Dubuque is the director of safety for CRH.
Koob also alleges that CRH published a written document, which contained
the answer "yes" to the question of whether Koob had ever refused to
take a drug or alcohol test when required by the Department of
Transportation (DOT) Regulations. The complaint alleges the "yes"
answer was false, the defendants knew the "yes" answer was false, and
the defendants had a reckless disregard for whether the answer was true
or false. The complaint alleges the statement was read by employees of
Arthur Wells, Inc., in connection with Koob's employment application.
The complaint seeks damages in excess of $25,000. (Doc. 1.)

On September 13, 2007, CRH removed the lawsuit to this court,
citing federal question jurisdiction under 28 U.S.C. § 1331. 28 U.S.C.
§ 1441(a). CRH claims the cause of action arose under the Federal Motor

Carrier Laws, 49 U.S.C. §§ 322, 504, 508, 31136, 31306, 31502, and their accompanying federal regulations. (Doc. 1 at 2-3.)

## II. DISCUSSION

In his motion to remand, Koob argues the court lacks subject matter jurisdiction to hear his complaint. Koob argues his complaint only raises issues of state law, and under the well-pled complaint rule, a federal question must be presented on the face of the complaint; a federal defense will not provide a federal court with jurisdiction. Koob also argues the plain language of 49 U.S.C. § 508 does not support removal. (Docs. 8, 13.)

In response, CRH argues that virtually every aspect of its transportation operations is governed by federal statutes and federal regulations, including drug testing of drivers and driver qualification procedures. In particular, CRH argues the reference in the complaint to the DOT Regulations illustrates the federal nature of the complaint, and under the artful pleading doctrine removal is appropriate. CRH also argues removal is appropriate under the complete preemption doctrine. Finally, CRH argues removal is appropriate because the Federal Omnibus Transportation Employee Testing Act (FOTETA) and its implementing regulations include preemption statements. In one recent case, <u>Rector v. LabOne, Inc.</u>, 208 F. Supp. 2d 987 (E.D. Ark. 2002), a court found FOTETA preempted a driver's state law complaints. (Doc. 9.)

In their motions to dismiss, CRH and Dubuque argue FOTETA specifies the procedures for drug testing, and that federal regulations provide specific administrative remedies for those interstate drivers who believe a motor-carrier employer has improperly reported information to a prospective motor-carrier employer. CRH and Dubuque argue these administrative remedies are the exclusive ones for addressing the plaintiff's claims and any state claims are therefore preempted. Finally, CRH argues 49 U.S.C. § 508 is only available after a plaintiff has exhausted administrative remedies. (Docs. 11, 15, 24.)

In response, Koob argues the plain language of 49 U.S.C. § 508 allows a state law claim for defamation to go forward. (Doc. 14.)

## A. Artful Pleading

Article III of the Constitution gives federal courts the authority to hear cases "arising under" the Constitution and laws of the United States. U.S. Const. art. III, § 2; <u>Merrell Dow Pharms. Inc. v. Thompson</u>, 478 U.S. 804, 807 (1986). The Constitution's grant of power was not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. <u>Merrell Dow</u>, 478 U.S. at 807. In its modern form, federal law provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Despite its broad phrasing, § 1331 "has been continuously construed and limited in light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy . . . ." <u>Verlinden B.V. v. Cent. Bank of Nig.</u>, 461 U.S. 480, 494-95 (1983). Indeed, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system. <u>Merrell Dow</u>, 478 U.S. at 809. Under § 1331, a court determines if a claim arises under federal law by reference to the well-pleaded complaint. <u>Id.</u> In other words, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 475 (1998).

The well-pleaded complaint rule makes the plaintiff the master of the claim and allows the plaintiff to avoid federal jurisdiction by relying exclusively on state law. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). A defense that raises a federal question is therefore inadequate to confer federal jurisdiction – even if the defense is anticipated in the plaintiff's complaint and even if the defense is the only true issue in the case. <u>Rivet</u>, 522 U.S. at 475. This includes the defense of preemption. <u>Caterpillar</u>, 482 U.S. at 393. As a result, the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are cases in which federal law creates the plaintiff's cause of action. <u>Merrell Dow</u>, 478 U.S. at 808. Whether a case may be removed to federal court under 28 U.S.C. § 1441 is also determined by referring to the well-pleaded

complaint.  See id.  Under 28 U.S.C. § 1441(a), any civil action brought in state court may be removed to a United States District Court, if the district court has original jurisdiction and Congress has not provided otherwise.  28 U.S.C. § 1441(a).

A necessary corollary to the well-pleaded complaint rule is the rule against artful pleading.  See Rivet, 522 U.S. at 475.  Under the rule against artful pleading, a plaintiff may not defeat removal by omitting to plead necessary federal questions.  Id.  If federal law creates the plaintiff's claim, omitting reference to the federal law cannot defeat removal.  Hays v. Cave, 446 F.3d 712, 713 (7th Cir. 2006).  Where a plaintiff has artfully pleaded his claims, a court may uphold removal even though no federal question appears on the face of the plaintiff's complaint.  Rivet, 522 U.S. at 475.  The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claims.[1]  Id.

In this case, CRH argues Koob referred to DOT Regulations in his complaint, making removal appropriate.  Koob's complaint states a claim for libel, alleging the facts and elements that would be part of a state law libel claim.  See Roberson v. Beeman, 790 S.W.2d 948, 950 (Mo. Ct. App. 1990) (stating the elements of a libel claim).  Libel is a type of defamation, an area of law traditionally regulated by the states.  Lauderback v. Am. Broad. Cos., 741 F.2d 193, 195 (8th Cir. 1984).  As part of his complaint, Koob alleges:

> 4.   On or about the 28th day of June, 2007, defendants published a written document which contained a "yes" answer to the question of whether plaintiff made "[a]ny refusal to test for drugs or alcohol when required by the Department of Transportation Regulation?"

(Doc. 1 at 2.)

The reference to the DOT Regulations is only in passing and only as part of the libel claim; it is not part of any effort to surreptitiously plead a federal claim based on a violation of federal regulations.  "Mentioning a federal issue in a contract, or for that

---

[1]The artful pleading doctrine and the complete preemption doctrine (discussed below) compliment one another.  Kutilek v. Union Pac. R.R. Co., 454 F. Supp. 2d 876, 881 (E.D. Mo. 2006).  In fact, as a practical matter, the artful pleading doctrine is subsumed by the complete preemption doctrine.  Id.

matter a complaint, does not determine the source of the claim itself." Hays, 446 F.3d at 714; see also MSOF Corp. v. Exxon Corp., 295 F.3d 485, 490 (5th Cir. 2002) (where the only reference to federal law was an allegation that defendant's facility was maintained in violation of state and federal regulations, plaintiffs' complaint could not be removed). Koob's complaint only states a claim for state law libel. Removal is not appropriate merely by a passing reference to the DOT regulations.

## B.  Complete Preemption

Article VI of the Constitution states that federal law is the supreme law of the land. U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, anytime a state statute conflicts with, or frustrates, federal law, the former must give way to the latter. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663-64 (1993). But in the interest of avoiding unintended encroachment on state authority, a court interpreting a federal statute will be reluctant to find preemption if the federal statute speaks to a subject traditionally governed by state law. Id. Accordingly, preemption "will not lie unless it is the clear and manifest purpose of Congress." Id. at 664. In determining congressional motives, the court should turn to the text and structure of the statute at issue. Id. If the statute contains an express preemption clause, that clause contains the best evidence of Congress' preemptive intent, and any statutory construction must begin with that clause. Id.

There are three circumstances for finding preemption. English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990). The first situation involves explicit preemption. Id. Under explicit preemption, state law is preempted to the extent a congressional statute explicitly says it is. Id. The second situation involves field preemption. Id. at 79. State law is preempted under field preemption, where Congress intended the federal government to occupy an area exclusively. Id. Field preemption may be inferred or implied from a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . [or where] the federal interest is so dominant that the federal system will be assumed to preclude

enforcement of state laws on the same subject." Id. That said, if the field believed to be preempted is one traditionally occupied by the states, congressional intent must be clear and manifest. Id. The third situation involves conflict preemption. Id. Under conflict preemption, a state law is preempted to the extent it actually conflicts with federal law or where state law stands as an obstacle to accomplishment of Congress' objectives. Id. Federal regulations may also provide a source of preemption, if the agency intends its regulations to have preemptive effect, and the agency is acting within its delegated authority. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699 (1984).

As noted above, a federal defense cannot generally provide the basis for removal. Rivet, 522 U.S. at 475. "Ordinary preemption," as just described, is usually one such federal defense - and not an independent basis for federal jurisdiction. See id. at 476. The complete preemption doctrine, however, provides an exception to the well-pleaded complaint rule.[2] Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606, 611 (8th Cir. 2006), cert. denied, 127 S. Ct. 1149 (2007). Unlike ordinary preemption, which acts only as a defense, complete preemption provides a basis for federal jurisdiction. See Caterpillar, 482 U.S. at 393. Under complete preemption, the preemptive force of a statute is so extraordinary that the statute converts an ordinary state common-law claim into a federal claim. Id. "If a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Id. In effect, complete preemption substitutes a federal cause of action for a state cause of action. Schmeling v. NORDAM, 97 F.3d 1336, 1342 (10th Cir. 1996). Complete

_____

[2]Case law surrounding the complete preemption doctrine is not consistent. Harper v. TRW, Inc., 881 F. Supp. 294, 296 (E.D. Mich. 1995). The doctrine has been a source of "both confusion and disagreement among the federal circuit and district courts." Id. To help avoid further confusion in an already confusing body of law, some courts and commentators have suggested referring to "complete preemption" as "jurisdictional preemption." Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 272 n.5 (2d Cir. 2005). This court retains the usual terminology, but notes that "ordinary preemption" refers to the federal defense, while "complete preemption" refers to the jurisdiction issue.

preemption therefore provides a basis for removal to federal court. <u>Chapman v. Lab One</u>, 390 F.3d 620, 625 (8th Cir. 2004); <u>Id.</u>

Instances of complete preemption are rare. <u>Kutilek</u>, 454 F. Supp. 2d at 880. To date, only a few statutes have been accorded the extraordinary preemptive force necessary to remove a well-pleaded state law claim. <u>Id.</u>; <u>Fifie v. Cooksey</u>, 403 F. Supp. 2d 1131, 1134 n.2 (M.D. Fla. 2005). Examples include the Railway Labor Act (RLA) and § 301 of the Labor Management Relations Act (LMRA), <u>Gore v. Trans World Airlines</u>, 210 F.3d 944, 949 (8th Cir. 2000); the Indian Gaming Regulation Act, <u>Gaming Corp. of Am. v. Dorsey & Whitney</u>, 88 F.3d 536, 547 (8th Cir. 1996); the Federal Railroad Safety Act (FRSA), <u>Peters v. Union Pac. R.R. Co.</u>, 80 F.3d 257, 262 (8th Cir. 1996); § 502(a) of the Employee Retirement Income Security Act (ERISA), <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 66 (1987); and the National Bank Act, <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 11 (2003).

When deciding a question of complete preemption, the "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable . . . ." <u>Beneficial Nat'l Bank</u>, 539 U.S. at 9 n.5. Only where Congress intended the federal statute to provide the exclusive cause of action for the plaintiff's state law claims will the federal statute support removal. <u>Id.</u> at 9. If the federal statute does not provide the exclusive cause of action, "then the complaint does not arise under federal law and is not removable." <u>Id.</u>; <u>see also</u> 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3722.1 (2007) (unlike complete preemption, ordinary preemption will not permit removal jurisdiction if the plaintiff chooses to base his complaint solely on state law).

**FOTETA**

CRH argues removal is appropriate because FOTETA includes a preemption statement. FOTETA became law in 1991, and directs the Secretary of Transportation to prescribe regulations that would establish drug testing for the airline, railroad, and trucking industries. <u>Fifie</u>, 403 F. Supp. 2d at 1135 n.4. The provisions for the trucking industry require the Secretary of Transportation to write

regulations that would create a program requiring motor carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of their commercial motor vehicle drivers.[3]   49 U.S.C. § 31306(b)(1)(A).   The law mandates testing for alcohol and other controlled substances, as defined by federal law.   49 U.S.C. § 31306(a),(b)(1)(A).   FOTETA includes specific preemption language, which reads:

> (g) Effect on State and local government regulations.
>
> A State or local government may not prescribe or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this section. However, a regulation prescribed under this section may not be construed to preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 31306(g).

The Eighth Circuit has addressed the question of FOTETA and complete preemption, albeit with respect to FOTETA's railroad provisions.   Chapman, 390 F.3d at 629.   In Chapman, Michael Chapman and Daniel Howell, both employees of Union Pacific Railroad, submitted urine samples as part of a random drug test.   Id. at 622.   Union Pacific forwarded the samples to LabOne for testing, which found the samples were inconsistent with human urine.   Id.   LabOne forwarded these results to Union Pacific, which then fired both Chapman and Howell.   Id.   Howell

---

[3]The directive states, in relevant part,

(b) Testing program for operators of commercial motor vehicles.

(1)(A) In the interest of commercial motor vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation and to conduct reasonable suspicion, random, and post-accident testing of such operators for the use of alcohol in violation of law or a United States Government regulation.   The regulations shall permit such motor carriers to conduct preemployment testing of such employees for the use of alcohol.   49 U.S.C. § 31306(b)(1)(A).

and Chapman each brought state actions, in Nebraska and Iowa, respectively, alleging various state law claims - including negligence and defamation. Id. LabOne removed the case against Howell on the basis of federal question jurisdiction, and removed the case against Chapman on the basis of federal question and diversity jurisdiction. Id. After the district courts dismissed the plaintiffs' claims, the Eighth Circuit consolidated the appeals. Id. at 622-23.

On appeal, Chapman and Howell both argued their state law claims were not preempted (under ordinary preemption) by FOTETA. Id. at 622. Howell also argued the district should have remanded for lack of jurisdiction, because FOTETA did not provide for complete preemption. See id. at 622. The Eighth Circuit agreed with the plaintiffs on both points. See id. at 629. On the subject of complete preemption, the court found FOTETA "to be distinguishable from other statutory schemes in which courts have found complete preemption." Id. ERISA, the LMRA, and the Indian Gaming Regulatory Act include specific jurisdictional provisions granting the federal courts jurisdiction and the authority to provide relief based on a private right of action created elsewhere within the statutes. Id. But unlike these three statutes, FOTETA does not provide a private right of action for a person aggrieved by negligence in the analysis of a drug test. Id. "[T]he absence of an alternative cause of action militates against a finding of complete preemption." Id.

The railroad and trucking provisions of FOTETA express similar objectives. Compare 49 U.S.C. § 20140(b)(1)(A), with 49 U.S.C. § 31306(b)(1)(A). The provisions for the railroad industry also require the Secretary of Transportation to establish regulations that would create a program requiring railroad carriers to conduct preemployment, reasonable suspicion, random, and post-accident testing of all railroad employees responsible for safety-sensitive functions.[4] 49 U.S.C.

_____

[4]The directive states, in relevant part,

(b) General.

(1) In the interest of safety, the Secretary of Transportation shall prescribe regulations and issue orders, not later than October 28, 1992, related to alcohol and
(continued...)

§ 20140(b)(1)(A). The law mandates testing for alcohol and other controlled substances, as defined by federal law. 49 U.S.C. § 20140(a),(b)(1)(A). Unlike the trucking industry provisions, the railroad provisions of FOTETA do not contain any express preemption language. See id.

Interpreting the trucking provisions of FOTETA, other courts have reached a similar conclusion, finding against complete preemption. Visina v. Wedge Cmty. Co-Op, Inc., Civil No. 07-122 DSD/SRN, 2007 WL 2908043, at *7 (D. Minn. Oct. 1, 2007); Gibson v. Occupational Health Ctrs. of Ark., No. 4:05CV640 JJM, 2005 WL 1922574, at *3 (E.D. Ark. Aug. 10, 2005); Burton v. Southwood Door Co., MEA, Inc., 305 F. Supp. 2d 629, 638 (S.D. Miss. 2003). The plain language of FOTETA's preemption clause speaks to "inconsistent" state law. 49 U.S.C. § 31306(g). Without any reference to removal jurisdiction or an exclusive federal cause of action, FOTETA's preemption clause is best viewed as one of ordinary preemption (creating a federal defense), and not complete preemption (creating a federal claim and justifying removal). Visina, 2007 WL 2908043, at *6; Burton, 305 F. Supp. 2d at 637-38. Indeed, Congress has created statutes which express "an unmistakable preference for a federal forum," and which provide for removal of state law claims. El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 484 (1999) (noting the "unusual preemption provision" of the Price-Anderson Act, 42 U.S.C. § 2014(hh)); see also Sullivan, 424 F.3d at 277 ("[T]he RLA demonstrates that Congress knew how to create federal-court jurisdiction when it

---

[4](...continued)
controlled substances use in railroad operations. The regulations shall establish a program requiring--

(A) a railroad carrier to conduct preemployment, reasonable suspicion, random, and post-accident testing of all railroad employees responsible for safety-sensitive functions (as decided by the Secretary) for the use of a controlled substance in violation of law or a United States Government regulation, and to conduct reasonable suspicion, random, and post-accident testing of such employees for the use of alcohol in violation of law or a United States Government regulation; the regulations shall permit such railroad carriers to conduct preemployment testing of such employees for the use of alcohol . . . . 49 U.S.C. § 20140(b)(1)(A).

wanted to. . . ."). The trucking provisions of FOTETA do not express a similar effort to remove state claims.

Case law addressing FOTETA's airline provisions provide further support for this conclusion. See Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 62 (2d Cir. 2006); Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, 1134 (9th Cir. 2003), opinion amended on denial of reh'g by, 350 F.3d 915 (9th Cir. 2003).[5] The airline provisions and trucking provisions contain almost identical preemption language. Compare 49 U.S.C. § 45106(a), with 49 U.S.C. § 31306(b)(1)(A). The airline preemption provision states,

> (a) Effect on State and local government laws, regulations, standards, or orders.
>
> A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter. However, a regulation prescribed under this chapter does not preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 45106(a).

In Drake and Ishikawa, the plaintiffs sued the drug test laboratories for negligently handling their urine samples. Drake, 458 F.3d at 53; Ishikawa, 343 F.3d at 1130. In each case, the defendant laboratories argued FOTETA preempted (under ordinary preemption) the plaintiffs' state law claims. Drake, 458 F.3d at 55; Ishikawa, 343 F.3d at 1131. Both the Second Circuit and the Ninth Circuit held otherwise, finding FOTETA did not preempt the plaintiffs' claims for negligence. Drake, 458 F.3d at 62; Ishikawa, 343 F.3d at 1134; but see Frank v. Delta Airlines Inc., 314 F.3d 195, 203 (5th Cir. 2002) (finding federal drug testing statutes and regulations preempted plaintiff's state law claims for faulty drug testing procedures). As Chapman notes, where the federal statute lacks even ordinary preemptive power, it follows that the statute would lack the "extraordinary" preemptive force necessary to transform a state law claim into a federal claim, justifying removal.

---

[5]The Eighth Circuit has cited both Drake and Ishikawa with approval. Chapman, 390 F.3d at 627.

_Chapman_, 390 F.3d at 629.  Accordingly, FOTETA does not support removal under the complete preemption doctrine.

**Rector v. LabOne Inc.**

CRH argues removal is appropriate based on _Rector v. LabOne, Inc._, 208 F. Supp. 2d 987 (E.D. Ark. 2002).  In _Rector_, Edward Rector brought suit against the drug testing laboratory, and others, after his employer fired him for allegedly testing positive for marijuana.  _Id._ at 988.  Rector sued the defendants in state court on state law claims, and the defendants removed to federal court.  _Id._  On the plaintiff's motion to remand and the defendants' motion to dismiss, the court found remand was inappropriate and FOTETA preempted the plaintiff's state law claims.  _Id._ at 996.

_Rector_ is not persuasive authority for two reasons.  First, the _Rector_ court never mentioned complete preemption; its analysis and basis for denying the motion to remand was under ordinary preemption, which would not justify removal jurisdiction.  _See_ _Burton_, 305 F. Supp. 2d at 638 n.14 (distinguishing _Rector_ for these reasons).  Second, _Rector_ was decided before the Eighth Circuit decided _Chapman_, which found FOTETA did not preempt (under ordinary preemption and complete preemption) state law claims.  _See_ _Glisson_, 2005 WL 1922574, at *3 (finding _Chapman_ and not _Rector_ to be a better indicator of the law in the Eighth Circuit); _see also_ _Fifie_, 403 F. Supp. 2d at 1139 ("[T]he Eastern District of Arkansas recently retreated from the position held in _Rector_.").  For these reasons, _Rector_ is not persuasive authority.

**Peters v. Union Pacific Railroad Company**

At the hearing, CRH argued removal was appropriate based on _Peters v. Union Pacific Railroad Co._, 80 F.3d 257 (8th Cir. 1996).  In _Peters_, Stephen Peters brought a conversion action against Union Pacific in state court for refusing to return his locomotive engineer certificate.  _Id._ at 259.  Union Pacific removed the case to federal court and the district court denied the motion to remand.  _Id._  On appeal, the Eighth Circuit affirmed, finding the Federal Railroad Safety Act (FRSA) completely preempted the plaintiff's state law claims.  _Id._

_Peters_ is distinguishable for one primary reason.  In _Peters_, the Eighth Circuit was interpreting the FRSA; it was not interpreting FOTETA or any other drug testing statute or regulation.  _See id._ at 261.  In addition, the FRSA, unlike FOTETA, included a broad, express preemption clause, which "evince[d]. . . a total preemptive intent."[6]  _Id._ at 261-62.  Since _Peters_ was not a drug testing case and the language of the FRSA differs from the language of FOTETA, _Peters_ is distinguishable from the current case.

**Federal Statutory Scheme**

CRH also argues removal is appropriate based on the breadth of the federal statutory scheme governing the trucking industry.  In its notice of removal, CRH cited 49 U.S.C. §§ 322, 504, 508, 31136, 31306, 31502, as providing a basis for federal jurisdiction.  (Doc. 1 at 2.)  The defendant in _Visina_, made a similar argument, arguing removal was proper based on the broad scope of federal law within the transportation industry.  _Visina_, 2007 WL 2908043, at *7.  The argument was unavailing. _Id._  The breadth or strength of a federal statutory scheme or of its preemptive scope is irrelevant to removal under complete preemption. _Id._  In essence, CRH appears to be making an argument of field preemption.  Under field preemption, state law is preempted where Congress intended the federal government to occupy an area exclusively. _English_, 496 U.S. at 79.  However, field preemption is a type of ordinary preemption and is analytically distinct from complete preemption.  _See_ _Sullivan_, 424 F.3d at 273 n.7.  As such, field

---

[6]The preemption clause of the FRSA was superseded after _Peters_. _See_ _Chapman_, 390 F.3d at 625.  When _Peters_ was decided, the clause stated, in relevant part,

> [L]aws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.  A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.

_Peters_, 80 F.3d at 261 (citing 45 U.S.C. § 434).

preemption is only a defense, and not a basis for removal.  See Rivet, 522 U.S. at 476.

The abundance of federal law underscores this point.  Any number of federal statutes or regulations may have an ordinary preemptive effect, but this cannot mean the statutes and regulations were also intended to have a complete preemptive effect, removing all of these causes to federal courts.  Sullivan, 424 F.3d at 272-73; Visina, 2007 WL 2908043, at *9.  To note a few examples, portions of the Federal Employees' Group Life Insurance Act (FEGLIA) preempt inconsistent state laws or regulations, 5 U.S.C. §§ 8705, 8709, but still allow state adjudication.  See Kidd v. Pritzel, 821 S.W.2d 566, 569 (Mo. Ct. App. 1991).  The same is true for the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136, which preempts certain state causes of action, M & H Enters. v. Tri-State Delta Chems., Inc., 984 S.W.2d 175, 178 (Mo. Ct. App. 1998), the Federal Communications Act (FCA), 47 U.S.C. § 303, et seq., which preempts certain state causes of action, Zimmer Radio of Mid-Mo., Inc. v. Lake Broad., Inc., 937 S.W.2d 402, 407 (Mo. Ct. App. 1997), and the Medical Device Amendments to the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 360k, which also preempt certain state causes of action.  Stefl v. Medtronic, Inc., 916 S.W.2d 879, 882 (Mo. Ct. App. 1996).  In Zimmer, the case was remanded to state court after the district court found the complete preemption doctrine did not apply to the FCA.  Zimmer, 937 S.W.2d at 404.

Expanding the doctrine of complete preemption beyond those select statutes which provide an exclusive federal cause of action, as already identified by the Eighth Circuit or the Supreme Court, would reroute "a substantial, if not huge," number of state cases into federal court. Visina, 2007 WL 2908043, at *10.  There is no evidence within FOTETA, or the other statutory provisions CRH cites, that Congress intended the federal courts to absorb plaintiff Koob's state law claims, absent diversity.  See id.

**Section 508**

CRH relies on several statutes within Title 49 of the United States Code in support of federal jurisdiction.  Of these statutes, both Koob and CRH point to 49 U.S.C. § 508 as support for their respective

positions.  (Doc. 1 at 2, Doc. 8 at 1.)  This section therefore merits specific mention.  Section 508 states, in relevant part,

> (a) Limitation on liability.
>
> No action or proceeding for defamation, invasion of privacy, or interference with a contract that is based on the furnishing or use of safety performance records in accordance with regulations issued by the Secretary may be brought against--
>
> (1) a motor carrier requesting the safety performance records of an individual under consideration for employment as a commercial motor vehicle driver as required by and in accordance with regulations issued by the Secretary;
>
> (2) a person who has complied with such a request;
>
> . . .
>
> (b) Restrictions on applicability.
>
> . . .
>
> (2) Person complying with requests.
>
> Subsection (a) does not apply to a person complying with a request for safety performance records unless--
>
> (A) the complying person and any agents of the complying person have taken all precautions reasonably necessary to ensure the accuracy of the records and have complied with the regulations issued by the Secretary in furnishing the records, including the requirement that the individual who is the subject of the records be afforded a reasonable opportunity to review and comment on the records; and
>
> (B) the complying person and any agents and insurers of the complying person have taken all precautions reasonably necessary to protect the records from disclosure to any person, except for such an insurer, not directly involved in forwarding the records.
>
> (3) Persons knowingly furnishing false information.
>
> Subsection (a) does not apply to persons who knowingly furnish false information.

49 U.S.C. § 508(a),(b).

Section 508 also contains a preemption statement:

> (c) Preemption of State and local law.

No State or political subdivision thereof may enact,
prescribe, issue, continue in effect, or enforce any law
(including any regulation, standard, or other provision
having the force and effect of law) that prohibits,
penalizes, or imposes liability for furnishing or using
safety performance records in accordance with regulations
issued by the Secretary to carry out this section.
Notwithstanding any provision of law, written authorization
shall not be required to obtain information on the motor
vehicle driving record of an individual under consideration
for employment with a motor carrier.

49 U.S.C. § 508(c).

To date, no case appears to have interpreted the provisions of
§ 508. However, the Pilot Records Sharing Act (PRSA), 49 U.S.C.
§ 44703(i), contains nearly identical language in every relevant
respect, and each statute serves a similar purpose.[7] <u>Compare</u> 49 U.S.C.

---

[7]The PRSA states, in relevant part,

(i) Limitation on liability; preemption of State law.

(1) Limitation on liability.

No action or proceeding may be brought by or on behalf of an
individual who has applied for or is seeking a position with
an air carrier as a pilot and who has signed a release from
liability, as provided for under paragraph (2), against--

(A) the air carrier requesting the records of that individual
under subsection (h)(1);

(B) a person who has complied with such request;

. . .
in the nature of an action for defamation, invasion of
privacy, negligence, interference with contract, or
otherwise, or under any Federal or State law with respect to
the furnishing or use of such records in accordance with
subsection (h).

(2) Preemption.

No State or political subdivision thereof may enact,
prescribe, issue, continue in effect, or enforce any law
(including any regulation, standard, or other provision
having the force and effect of law) that prohibits,
penalizes, or imposes liability for furnishing or using
records in accordance with subsection (h).

(continued...)

§ 508(c), with 49 U.S.C. § 44703(i). Interpretations of the PRSA would therefore clarify the analogous provisions of § 508. See Smith v. City of Jackson, Miss., 544 U.S. 228, 233 (2005). "[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." Id. The PRSA became effective November 19, 2001; § 508 became effective January 31, 1999. 49 U.S.C. § 44703(i); 49 U.S.C. § 508(c).

The PRSA does not create any federal cause of action, and there is no evidence Congress intended for the PRSA to make state law claims removable.[8] Johnson v. Baylor Univ., 214 F.3d 630, 634 (5th Cir. 2000). The PRSA does not completely preempt state causes of action; the PRSA merely provides a federal defense, under ordinary preemption, to a state law claim. Id. In finding the PRSA lacked complete preemptive force, the Fifth Circuit discounted the defendant's arguments relating to the extensive federal regulation of the aviation industry. Id. In Johnson, Vernon Johnson, a pilot, sued Baylor University in state court after the university told his new employer Johnson had been fired for misconduct. Id. at 631. Baylor University removed the case and Johnson moved to remand for lack of federal question jurisdiction. Id.

_____

[7](...continued)

(3) Provision of knowingly false information.

Paragraphs (1) and (2) shall not apply with respect to a person who furnishes information in response to a request made under subsection (h)(1), that--

(A) the person knows is false; and

(B) was maintained in violation of a criminal statute of the United States.

49 U.S.C. § 44703(i).

[8]When Johnson was decided, the PRSA was codified at 49 U.S.C. § 44936(g). See Johnson, 214 F.3d at 631-32. The language of the PRSA was the same as it is in its current form. Compare 49 U.S.C. § 44936(g), with 49 U.S.C. § 44703(i).

Like the PRSA, the plain language of § 508 does not provide for any federal cause of action or any specific grant of federal jurisdiction. See 49 U.S.C. § 508. Accordingly, § 508 does not provide complete preemption of state law claims, and cannot justify removal to this court. See Beneficial Nat'l Bank, 539 U.S. at 9.

**Federal Regulatory Scheme**

CRH also argues removal is appropriate based on FOTETA's implementing regulations and their extensive regulation of the trucking industry. FOTETA's implementing regulations describe the inquiries and investigations an employer must make into his employee drivers, 49 C.F.R. § 391.23; the procedures for testing drivers, 49 C.F.R § 40, 49 C.F.R. § 382.105, 49 C.F.R. § 382.305; the frequency with which such tests must be performed, 49 C.F.R. § 382.305; the methods for correcting erroneous information within drug test records, 49 C.F.R. § 391.23(j); the penalties for violating FOTETA's drug test provisions, 49 C.F.R. § 382.507; and the manner in which to challenge a positive drug test, 49 C.F.R. § 386.11. The federal regulations implementing FOTETA also include preemption language:

> (a) Except as provided in paragraph (b) of this section, this part preempts any State or local law, rule, regulation, or order to the extent that:
>
> (1) Compliance with both the State or local requirement in this part is not possible; or
>
> (2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part.
>
> (b) This part shall not be construed to preempt provisions of State criminal law that impose sanctions for reckless conduct leading to actual loss of life, injury, or damage to property, whether the provisions apply specifically to transportation employees, employers, or the general public.

49 C.F.R. § 382.109.

Despite these regulations, neither FOTETA nor the implementing regulations create a federal cause of action - let alone an exclusive one - for an employee wronged by DOT drug testing procedures. Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 307-09 (6th Cir. 2000); Visina, 2007 WL 2908043, at *6; Burton, 305 F. Supp. 2d at 637-38.

FOTETA is framed only as a general mandate to the Department of the Transportation; the accompanying regulatory scheme does not reveal any concern for the protection of drivers who believe they have been wronged through the drug testing process. Parry, 236 F.3d at 309. Federal regulations, standing alone, cannot create a private cause of action unless the action is at least implied from the relevant statute. Id. Absent an exclusive cause of action, neither the statute nor its regulations has the complete preemptive force necessary for removal jurisdiction. See Beneficial Nat'l Bank, 539 U.S. at 9.

In fact, courts should be reluctant to infer even ordinary preemption from the comprehensiveness of federal regulations. Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 717 (1985). Because of their specialized functions, agencies normally deal with problems in far more detail than Congress would. Id. "To infer [ordinary] pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive." Id. Any such rule would be inconsistent with the federal-state balance espoused by the Supremacy Clause. Id. The various federal regulations governing the trucking industry do not justify removal. See id.

**Definition of Refusal**

In his complaint, Koob alleges the defendants falsely published a "yes" response to the "question of whether plaintiff made '[a]ny refusal to test for drugs or alcohol'" as required by the DOT. At the hearing, CRH argued removal is proper because the federal regulations define what is a refusal to take a DOT drug test. See 49 C.F.R. § 40.191(a).

Section 40.191(a) lists eight examples of what constitutes a refusal to take a drug test. 49 C.F.R. § 40.191(a)(1)-(8). Within this regulation, there is not any preemption language or any mention of a federal cause of action that would justify removal. See id.; see Beneficial Nat'l Bank, 539 U.S. at 9. To the extent § 40.191(a) defines Koob's cause of action, or requires interpretation, the federal regulation should be viewed as providing a possible federal defense. See Great S. Bank v. Wal-Mart Stores E., Inc., No. 06-5164, 2006 WL

3390262, at *2 (W.D. Ark. Nov. 22, 2006) ("While Wal-Mart may cite federal regulations in its defense, and while some federal regulations may have to be interpreted for an analysis of the Plaintiff's [contract] claim[, the] record is void . . . of any substantial federal question.").  The question of whether a federal regulation provides a federal defense is an issue for the state court to determine on remand, and not a basis for federal jurisdiction.  See Rivet, 522 U.S. at 475.  The Missouri courts can decide whether provisions of federal regulations preempt certain state law claims.  Connelly v. Iolab Corp., 927 S.W.2d 848, 854-55 (Mo. 1996) (citing 21 C.F.R. §§ 50.20, 50.25, 813.35, 813.5, 813.66); Silvey v. Mallinckrodt, Inc., 976 S.W.2d 497, 501 (Mo. Ct. App. 1998) (citing 9 C.F.R. §§ 112.2, 112.5); Walker v. St. Louis-Sw. Ry. Co., 835 S.W.2d 469, 474 (Mo. Ct. App. 1992) (citing 49 C.F.R. § 213.9).  The federal regulation defining refusal does not support removal.

**Disposition**

The federal statutes and regulations cited by CRH do not allow removal of Koob's state law claim of libel.  Allowing removal under these circumstances, without an exclusive federal cause of action, would create "something of an odd, if not illogical, result: the state law cause of action would be preempted, but the case could be removed to federal court anyway, but with nothing left of that claim." Visina, 2007 WL 2908043, at *10; see also Rogers v. Tyson Foods, Inc., 308 F.3d 785, 788 (7th Cir. 2002) ("Logically, complete preemption would not be appropriate if a federal remedy did not exist in the alternative. Otherwise, a plaintiff would be forced into federal court with no relief available. . . .").

An analysis under complete preemption is jurisdictional in nature and therefore preliminary to any consideration of the merits of the claim or the defenses.  Schmeling, 97 F.3d at 1343.  Having decided removal is inappropriate under the circumstances, the case must be remanded, and the court may not address the merits of any ordinary preemption defenses.  See Lontz v. Thorp, 413 F.3d 435, 438 (4th Cir. 2005).  The question of whether Koob's libel claim is preempted by a federal statute or regulation will be an issue for the state court to resolve on remand.  Id.  Nothing in this memorandum should therefore be

construed as addressing any affirmative defense of preemption that might apply.


### III.  CONCLUSION

The federal statutes and regulations cited by CRH do not provide an exclusive federal cause of action.  As a result, Koob's claim for libel may not be removed under the artful pleading or complete preemption doctrines.  For these reasons,

**IT IS HEREBY ORDERED** that the motion of plaintiff David Koob to remand the case back to the Circuit Court of the City of St. Louis (Doc. 8) is sustained.

**IT IS FURTHER ORDERED** that the motions of defendant CRH Transportation, Inc. and John Dubuque to dismiss the case (Docs. 10, 24) are deferred to the state court.



_____/S/ David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


Signed on December 10, 2007.